No. 28,140.

THE BOARD OF HOSPITALS AND HOMES OF THE NORTHWEST KANSAS CONFERENCE OF THE METHODIST EPISCOPAL CHURCH, *Appellant,* v. JOHN G. ELLIOTT, LUELLA FOOTE et al., *Appellees.*

(267 Pac. 1093.)

Opinion filed June 9, 1928.

*Tom Kennett,* of Concordia, and *Z. C. Millikin,* of Salina, for the appellant.

*Park B. Pulsifer* and *Clyde L. Short,* both of Concordia, for appellee Luella Foote.

The opinion of the court was delivered by

BURCH, J.: The action was one by a trustee to obtain an interpretation of a will with respect to the trustee's power to sell and convey real estate. Existence of the power was denied, and the trustee appeals.

The scheme of the will, so far as now material, was this: Specific bequests of real estate and money; gifts of annuities to be paid to beneficiaries during their lives; devise of the residue of the estate, real, personal and mixed, to the board of hospitals and homes of the Northwest Kansas Conference of the Methodist Episcopal Church, in trust, to constitute and to remain intact as a perpetual trust fund, the net income of which shall be perpetually used and applied for the benefit of the worthy and deserving poor who may become inmates of hospitals under the control of the board. The scheme for execution of the will was this: The board was named as executor and trustee. After the specific bequests and annuities were paid the estate was to be closed, and the *corpus* of the estate was to vest in the board in trust for the charitable purposes indicated. The fifteenth paragraph of the will read as follows:

"In order to provide for the execution of the directions, bequests and conveyances as hereinbefore stated, and in order to enable my said executor and trustee hereinafter named to fully carry out and perform the provisions of this

my last will and testament, I give, devise, bequeath and convey to the board of hospitals and homes of the Northwest Kansas Conference of the Methodist Episcopal Church all of my estate with full power to sell and convey at public or private sale and execute good and sufficient instruments and deeds of conveyance therefor without asking or obtaining authority or order of any court or judge, hereby making and constituting and appointing the said board of hospitals and homes of the Northwest Kansas Conference my true and lawful attorney in fact and agent to do any and all things necessary in the premises to fully carry out and perform my wishes, will and bequests as hereinbefore made, and hereby giving and granting unto my said executor and trustee full authority and power to make, execute and deliver any and all instruments, conveyances, deeds, releases, or other papers, and to receive and collect all moneys and property due and belonging to my estate and issue acquittances therefor, and to do and perform any and all other acts which may be necessary to administer my estate and perform my said will, the same as I could do if personally present and acting for myself."

The board qualified as executor, but resigned because of doubt of its·legal capacity to serve, and an administrator with will annexed was appointed. The administrator performed his functions, closed the estate, was discharged by the probate court, and made distribution to the board as trustee. The final account and the receipt of the distributee show personal property of the value of $110,656, and real estate of the value of $70,000. The personal property consisted of money, bonds, bank stock and mortgages. The bank stock has ceased to pay dividends, and some of it could not be sold on the market, although it has a book value. Since the estate was closed annuities have been regularly paid out of income.

The board as trustee contracted to sell lots in the city of Concordia on which stands a two-story building used for business purposes, and which is rented for $125 per month. The net income was not disclosed. The sale price was $25,000. The reason for making the sale was that the price was advantageous, and the proceeds can be safely invested in bonds or mortgages producing a better return.

The will appointed the board executor and testamentary trustee to collect assets, pay debts, and hold and administer the estate for the several lives of the annuitants. The will then devised the residue to the board in trust for charity.

"An executor as such, except under special provisions of statute, has nothing to do with the real estate of his testator. If real estate, or a power over real estate, is devised to him as executor, he takes it as a devisee, and not in his general capacity as executor." (*Jones v. Atchison, Topeka, &c., Railroad,* 150 Mass. 304, 307.)

With the closing of the estate by the administrator with will annexed, the purpose of statutory administration was accomplished, and no beneficiary may complain that the estate was closed before annuities were paid, because the property is now in the hands of the very trustee appointed by the will to hold, manage, and pay annuities.

Trustees have no power to sell land for the purpose of reinvesting the proceeds unless the power is granted by the will. The limitation is a vestige of feudal conception of landholding. It is now universally held the grant may be express, or may be implied Usually it is said the implication must arise from necessity. But now that society is no longer conceived as static, that land has become a commodity, and that, for investment purposes, other forms of property more nearly combine maximum of safety with maximum of return, there is a tendency to imply power of sale whenever sale would be in aid of the purpose of the trust, unless there is clear indication of intention to withhold power of sale. (2 Perry on Trusts, 6th ed., § 766, p. 1270, note b.) In the case of *Robinson v. Robinson,* 105 Me. 68, cited in the note just referred to, the first paragraph of the syllabus reads:

"While it is true that under the original theory of a trust the powers and duties of the trustee were confined substantially to holding and caring for the property, it is equally true that the purposes of the modern trust are of a much broader character, requiring ordinarily much greater powers on the part of the trustee, including a power of sale, which is generally expressly given."

Subject to the annuity charge, the destination of the property disposed of by the will was an income-producing trust fund. No distinction was made between classes of property, real, personal and mixed, as components of the fund. Money must be invested and reinvested, mortgages fall due, bonds mature, banks reorganize and go out of business. None of the personal property could be retained perpetually in specie as part of the fund, and there is nothing in the will to indicate that improved city lots were to be inalienable forever. The fund was to be perpetually preserved intact, but not each piece of property, whether real, personal or mixed, which the testatrix owned at her death.

The trustee for the lives of the annuitants owed the ultimate trustee the duty to manage the estate in the most beneficial manner. Every provision in the will could be carried out without the fifteenth

paragraph. It was inserted for the specific purpose of giving legal title, so that power of sale might be exercised as freely and simply as if the property were privately owned. The power granted is general and plenary. It applies equally to all classes of property and to effective accomplishment of every object of the will. Reading the entire will, intention to restrain exercise of the power, at the present stage of administration of the trust, to sales of land to raise funds to pay annuities, is not disclosed.

Bad faith is not imputed to the trustee, and the court may not substitute its judgment of what is the best method of administering the trust for the judgment of the trustee.

The judgment of the district court is reversed, and the cause is remanded with direction to sustain the power of sale.